IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRE GOODLOE, #B-55862, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-00938-NJR |
| | ) |
| TIMOTHY R. QUIGLEY, | ) |
| KENNETH HAMILTON, | ) |
| C/O PHELPS, ZACHARY MOORE, | ) |
| C/O SMITH, SERGEANT PFISTER, | ) |
| and C/O BROCK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Andre Goodloe, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983. In the complaint, Plaintiff primarily claims that six correctional officers at Shawnee Correctional Center ("Shawnee") used excessive force against him on September 19, 2014. *See* Doc. 1, pp. 7-15. Following the incident, he transferred to Menard, where a seventh correctional officer denied him food. *Id.* at 15. Plaintiff now sues the seven correctional officers for violating his rights under the First, Fourth, and Eighth Amendments. Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief. *Id.* at 16-20.

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Plaintiff's complaint survives preliminary review under this standard.

## Complaint

On September 14, 2014, Plaintiff entered Shawnee's dining hall in search of a lieutenant who would sign a form authorizing payment for postage on a personal letter. *See* Doc. 1, p. 7. After spotting Lieutenant Quigley, Plaintiff approached him and asked him to sign the form. Lieutenant Quigley declined to do so. Plaintiff asked him if he would sign the form after Plaintiff ate his lunch. Lieutenant Quigley again said, "No."

Plaintiff then asked Lieutenant Quigley if signing forms was one of his job duties. Lieutenant Quigley responded by stating, "Ill (sic) show you my job." *Id*. He gestured for the authorization form and envelope. When Plaintiff handed both to the lieutenant, he threw the items on the floor and ordered Plaintiff to pick them up.

Plaintiff refused to do so. Instead, he asked the lieutenant to "please pick up his mail." *Id*. Lieutenant Quigley took out his handcuffs and instructed Plaintiff to follow *his* order or face solitary confinement. Plaintiff refused and again asked the lieutenant to pick up the documents. Lieutenant Quigley then pulled out his pepper spray and asked Plaintiff if he wanted to get sprayed. *Id*. at 8.

At this point, Plaintiff's "emotions got involved." *Id*. Plaintiff swung his hand at Lieutenant Quigley without striking him. In response, Lieutenant Quigley sprayed Plaintiff in the face, arms, and chest with pepper spray. Officers Smith and Moore "suddenly and violently" restrained Plaintiff by handcuffing him behind his back. After Plaintiff was cuffed and subdued, Lieutenant Quigley subjected him to a second round of pepper spray.

Officers Smith and Moore then threw Plaintiff to the ground. *Id*. at 9. They tightened his handcuffs so tightly that his wrists began to bleed. Officer Smith pinned Plaintiff to the floor by placing a knee on his back, while Officer Phelps placed a knee on his neck and punched Plaintiff in the head 15-20 times. Officer Moore pulled Plaintiff's left index finger back until it "snapped." *Id*. at 10. When Plaintiff yelled for help, the same officer reached over, grabbed Plaintiff's right thumb, and pulled it back until it fractured.

As Plaintiff continued calling for help, Lieutenant Quigley stood and watched, making no effort to intervene or stop the use of force. Plaintiff began having problems breathing and screamed, "I can't breath[e]." *Id*. at 11. In response, Officer Phelps said, "[Y]ou don't deserve to breath[e]." *Id*.

Plaintiff was eventually picked up by his legs and neck and taken to Shawnee's healthcare unit. There, Sergeant Pfister, Officer Hamilton, an unidentified officer, and a nurse[1] met with him. Sergeant Pfister directed Plaintiff to the sink to flush his eyes with water, but he turned on hot water instead of cold water. *Id*. at 12. When Plaintiff recoiled, Sergeant Pfister and Officer Hamilton laughed. The pepper spray was eventually flushed from his eyes.

The nurse then asked Plaintiff to describe his injuries. When he reported that two of his fingers felt like they were broken, she said, "They should be." *Id.* After Plaintiff described bumps on his head, scrapes on his leg, and bleeding and numbness in his wrists, the nurse turned to the officers and said, "He's okay." *Id.* After his injuries were photographed, Plaintiff was taken to solitary confinement, stripped of all clothing, and forced to stand naked for "several" hours. *Id*.

---

[1] Plaintiff did not name the unidentified officer or the nurse as a defendant in the case caption or bring a claim against either. For that reason, these individuals and any claims against them are considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551 (7th Cir. 2005) (for an individual to be properly considered a party under Rule 10, he must be "specif[ied] in the caption").

He was then escorted to internal affairs, where a major photographed his wrist injuries. *Id*. at 13. The major commented on the fact that the "military got Defendant Lt. Quigley over aggressive." *Id*. Plaintiff then returned to the holding cell, where he remained until he transferred to Menard the following day.

While he waited, Plaintiff was denied all meals on September 19, 2014. *Id*. at 14. Plaintiff was verbally harassed and taunted by Shawnee officers.[2] One officer told Plaintiff that he was lucky the officer was not present during the incident because it would have been worse. Officer Phelps and Sergeant Pfister made fun of him for complaining about his inability to breathe. Other officers warned Plaintiff that he would be "welcome[d] . . . with open arms" at Menard. *Id*.

By the time he arrived at Menard on September 20, 2014, Plaintiff feared for his life. He was placed in a holding cell in chains and shackles. Five correctional officers entered the cell and told Plaintiff to "explain [him]self." *Id*. at 15. After he told his side of the story, the officers said, "[W]e should be kicking your ass right now and sending you to the infirmary for two weeks." *Id*. Instead, they assigned him to a "stripped out" cell for three days and then transferred Plaintiff to Pontiac on September 22, 2014. During the three days he was at Menard, Officer Brock denied him meals during each of his shifts. *Id.*

Plaintiff now sues Defendants Quigley, Hamilton, Phelps, Moore, Smith, Pfister, and Brock for interfering with his right to send personal mail under the First Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment. He seeks declaratory judgment, monetary damages, and injunctive relief. *Id*. at 16-20.

---

[2] Plaintiff does not assert a claim against any of the defendants for verbally harassing him, and the type of harassment he describes would not support an independent claim. *See Beal v. Foster*, -- F.3d --, No. 14-2489 (7th Cir. Oct. 2, 2015); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (standing alone, verbal harassment, name calling, and rude comments by prison staff generally do not constitute cruel and unusual punishment).

**Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* complaint as set forth below:

**Count 1:** **Defendant Quigley violated Plaintiff's First Amendment right to send and receive personal mail when he refused to sign Plaintiff's postage payment authorization (Doc. 1, p. 17);**

**Count 2:** **Defendant Quigley subjected Plaintiff to the unlawful use of excessive force in violation of the Eighth Amendment when he sprayed Plaintiff with pepper spray a second time after he was already handcuffed and subdued (Doc. 1, pp. 17-18);**

**Count 3:** **Defendant Quigley failed to protect Plaintiff from the use of excessive force in violation of the Eighth Amendment when he stood by and watched other Shawnee officers beat Plaintiff (Doc. 1, p. 17);**

**Count 4:** **Defendants Smith and Moore subjected Plaintiff to the unlawful use of excessive force in violation of the Eighth Amendment when they handcuffed him too tightly, beat him, and injured him (Doc. 1, pp. 17-18);**

**Count 5:** **Defendant Phelps subjected Plaintiff to the unlawful use of excessive force in violation of the Eighth Amendment when he beat Plaintiff in the head (Doc. 1, p. 19);**

**Count 6:** **Sergeant Pfister subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment when he offered Plaintiff hot water to flush his eyes after he was pepper sprayed, and Officer Hamilton failed to protect him from the same (Doc. 1, p. 19); and**

**Count 7:** **Officer Brock subjected Plaintiff to unconstitutional conditions of confinement at Menard when he denied him meals during his shifts from September 20-22, 2014 (Doc. 1, p. 15).**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of the counts and discussion of the same do not constitute an opinion regarding their merit.

Plaintiff shall be allowed to proceed with **Counts 2, 3, 4,** and **5; Counts 1, 6,** and **7** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 1 – Mail Interference

The Seventh Circuit has long held that "[i]nmates have a First Amendment right both to send and receive mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Although the First Amendment "applies to communications between an inmate and an outsider," a sporadic disruption of mail service will not violate the Constitution. Therefore, "merely alleging an isolated delay or some other relatively short-term . . . disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment." *Rowe*, 196 F.3d at 782. A valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000).

What Plaintiff describes in the complaint falls woefully short of this standard. Plaintiff seems to suggest that a mail interference claim arises under the First Amendment whenever a prison official fails to stop and drop whatever the official is doing in order to ensure the prompt transmission of personal mail. But the Constitution does not hold prison guards to such high standards. Lieutenant Quigley might have been more professional in his response to Plaintiff. He did not, however, interfere, in any constitutionally significant manner, with Plaintiff's mail. Further, Plaintiff could simply have asked a different lieutenant to sign his postage payment authorization. **Count 1** against Defendant **Quigley** does not survive threshold screening under § 1915A and shall be dismissed with prejudice.

### Counts 2, 4, 5, and 6 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt*, 224 F.3d at 619. Force "qualifies as excessive for the purpose of Eighth Amendment and due process jurisprudence when it entails the 'unnecessary and wanton infliction of pain.'" *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 667 (7th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted)). It has long been recognized that the "core requirement" of an Eighth Amendment excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley*, 475 U.S. at 319). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Factors that guide the Court's analysis of whether an officer's use of excessive force was legitimate or malicious are the need for an application of force, the amount of force used, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury suffered by the prisoner. *Hudson*, 503 U.S. at 7; *Hendrickson*, 589 F.3d at 890; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

**Count 2** passes muster under this standard. This claim focuses on the force that Defendant Quigley used the *second* time he sprayed Plaintiff with pepper spray. At the time, Plaintiff alleges that he was handcuffed and subdued. Given these allegations, the use of pepper spray may have been gratuitous. *See Barrett v. Wallace*, 570 Fed. Appx. 598, 601 (7th Cir. 2014) (inmate needed to prove that pepper spray was applied "maliciously and sadistically to

cause harm" rather than in a "good-faith effort" to gain his compliance); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 727 (7th Cir. 2013) (discussing "general proposition" that use of pepper spray on subdued individual is excessive). Accordingly, **Count 2** shall proceed against Defendant **Quigley**.

**Count 4** also survives threshold review. Plaintiff brought this claim pursuant to the Fourth Amendment, which applies to arrestees, however, it is properly analyzed under the Eighth Amendment, which applies to prisoners. According to the complaint, Defendants Smith and Moore handcuffed Plaintiff so tightly that his wrists began to bleed, and he still suffers from scarring and numbness. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (holding that prisoner's allegations, including that he suffered unnecessary pain while handcuffed for seven hours, were sufficient to state an Eighth Amendment violation); *Payne v. Pauley*, 337 F.3d 767, 774 (7th Cir. 2003) (reversing summary judgment on arrestee's Fourth Amendment claim of excessive force based in part on overly tight handcuffs). In addition, these defendants forcefully held Plaintiff down and beat him while he was handcuffed. Under the circumstances, **Count 4** shall proceed against Defendants **Smith** and **Moore**.

**Count 5** shall also receive further review. According to the complaint, Defendant Phelps hit Plaintiff in the head 15-20 times while shoving a knee into his neck after he was already handcuffed and subdued. And when Plaintiff complained that he could not breathe, this defendant allegedly told Plaintiff that he did not "deserve" to breathe. Under these facts, **Count 5** shall proceed against Defendant **Phelps**.

**Count 6** does not articulate a viable claim against either Defendant Pfister or Hamilton. Plaintiff alleges that Defendant Pfister offered him hot water to flush his eyes, and Defendant Hamilton did not intervene. Plaintiff refused to use the hot water, and no allegations suggest that

he was forced to use it after that point. Plaintiff does not allege that he was harmed in any way by the temperature of the water. Under the circumstances, **Count 6** falls short of describing conduct that runs afoul of the Eighth Amendment, and this claim shall be dismissed against Defendants **Pfister** and **Hamilton** without prejudice.

### Count 3 – Failure to Protect

A plaintiff asserting a failure to protect claim must show that he was incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference" to that danger. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, yet failed to take any action. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996); *Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). The complaint clearly suggests that Defendant Quigley knew that Plaintiff faced a substantial risk of harm. He stood watching other officers beat Plaintiff, while he was allegedly handcuffed, helpless, and screaming for help. **Count 3** shall proceed against Defendant **Quigley**.

### Count 7 – Denial of Adequate Nutrition

Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). "Adequate food . . . [is] among the 'minimal civilized measure of life's necessities" that must be afforded to prisoners. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012) (citations omitted). But an occasional missed meal does not give rise to an Eighth Amendment claim, particularly where an inmate does not allege that his health was endangered as a result. *Id.*; *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (explaining

that extent, duration, and consequences are relevant in assessing whether deprivation of food violates Eighth Amendment); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting that even two meals per day on "regular, permanent basis" may satisfy the Eighth Amendment if nutritionally adequate). Plaintiff's claim that Defendant Brock denied Plaintiff a meal during each 3-11 shift he worked from September 20-22, 2014, states no claim for relief. Even if Defendant Brock worked each day, Plaintiff only missed three meals in three days. And Plaintiff does not allege that this endangered his health in any way. Under the circumstances, the complaint supports no Eighth Amendment claim for inadequate nutrition, and **Count 7** against Defendant **Brock** shall be dismissed without prejudice.[3]

### Pending Motion

Plaintiff filed a motion for recruitment of counsel (Doc. 3), which shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** in the complaint (Doc. 1) is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Further, **COUNTS 6** and **7** are **DISMISSED without prejudice** for the same reason.

**IT IS ALSO ORDERED** that Defendants **HAMILTON, PFISTER,** and **BROCK** are **DISMISSED** without prejudice from this action.

As to **COUNTS 2, 3, 4,** and **5**, the Clerk of Court shall prepare for **DEFENDANTS QUIGLEY, PHELPS, MOORE,** and **SMITH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to

---

[3] Plaintiff asserts no claim based on the denial of three meals in one day at Shawnee on September 19, 2014. That claim would be subject to denial, however, under the same rationale used to deny Count 7.

each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the motion for recruitment of counsel (Doc. 3).

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 9, 2015

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**